**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JUNIOR ALBERTO MILLANO**
**CHAVEZ, A# 244747983,**

**Petitioner,**

**v.** **Case No. 2:26cv57**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

**AMENDED REPORT AND RECOMMENDATION**

Pending before the Court is an Amended Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 25. In his Amended Petition, Petitioner challenges his detention on the grounds that the Department of Homeland Security ("DHS") never lawfully revoked his humanitarian parole, and accordingly, his ongoing detention by Immigration and Customs Enforcement ("ICE") is unlawful. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the undersigned **RECOMMENDS** that the Amended Petition, ECF No. 25, be **GRANTED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

*1. Procedural Background*

The undersigned issued a Report and Recommendation ("the original R&R") on May 18, 2026, setting forth the procedural history of this case. ECF No. 16. In the original R&R, the undersigned recommended dismissal of the Petition, ECF No. 1, because Petitioner was subject to an administratively final removal order pursuant to 8 U.S.C. § 1231, and therefore his detention was presumptively reasonable. *Id.* at 6–7. Petitioner objected to the R&R, ECF No. 17, and

Respondents did not file a response to Petitioner's objections. However, on June 25, 2026, Respondents filed a notice indicating that an Immigration Judge ("IJ") reopened Petitioner's removal proceedings, and his detention authority shifted from § 1231 back to § 1225(b)(2)(A). ECF No. 19 at 2–3.

Because the original R&R was predicated on a procedural posture that no longer exists, the Court issued an Order requiring Petitioner to file a response to Respondents' notice on or before July 14, 2026. ECF No. 20. On July 14, 2026, Petitioner, now represented by counsel, filed a Consent Motion to Amend Habeas Petition, ECF No. 23. The Court granted the Consent Motion to Amend Habeas Petition and ordered that Respondents file a response to the Amended Petition within seven days, and ordered that Petitioner could file a reply, if any, within seven days of Respondents' response. ECF No. 24.

The Amended Petition was docketed on July 28, 2026. ECF No. 25. The Amended Petition seeks Petitioner's release due to Respondents' failure to lawfully terminate his parole and argues that Petitioner's ongoing detention is unlawful for several reasons. *Id.* at ¶¶ 33–67. Petitioner asserts four claims for relief. *Id.* at ¶¶ 68–112. Count One alleges that Petitioner's unlawful arrest and detention violate the Administrative Procedure Act ("APA"). *Id.* at ¶¶ 68–80. Count Two alleges that an agency regulation that allows a Notice to Appear to serve as notice of parole termination exceeds statutory authority authorized by Congress and violates the APA and Petitioner's procedural due process rights. *Id.* at ¶¶ 81–86. Count Three alleges that Respondents' failure to properly revoke Petitioner's parole violates his procedural due process rights conferred by the Fifth Amendment to the U.S. Constitution. *Id.* at ¶¶ 87–101. Lastly, Count Four[1] alleges

[1] "Count Three" appears twice in the Amended Petition. ECF No. 25 at 21, 24. The Court refers to the second reference to Count Three as Count Four.

that Petitioner's prolonged detention without purpose violates his substantive and procedural due process rights conferred by the Fifth Amendment. *Id.* at ¶¶ 102–12.

Respondents filed an opposition to the Amended Petition ("Respondents' Opposition") on August 4, 2026. ECF No. 27. Respondents' Opposition is largely pro-forma and almost identical to the opposition they filed in response to Petitioner's original petition. *Id.* They argue that Petitioner is an applicant for admission and subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). They contend that he remains an arriving alien even if he was previously released on parole. *Id.* at 5, 17.

Petitioner filed a reply ("Petitioner's Reply") on August 7, 2026. ECF No. 28. Petitioner's Reply emphasizes that Respondents failed to respond to the central argument in this case—whether Petitioner's parole was properly terminated. *Id.* at 1. Petitioner reiterates that by arresting him before terminating his parole, Respondents violated the law, and the proper remedy is release. *Id.* at 2–9.

Accordingly, this matter is now ripe for an amended report and recommendation based on the current procedural posture of this action.

*2. Factual Background*

Petitioner entered the United States on or about October 7, 2024, after obtaining a CBP One application appointment. ECF No. 25 at ¶¶ 16–17. DHS officials served Petitioner a Form I-862 Notice to Appear charging him under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who, at the time of application for admission, did not possess valid entry or travel documents. *Id.*, ¶ 16; ECF No. 25, attach. 1 at 1–5 (the first NTA). Respondents then granted Petitioner parole, which was valid for twenty-one months and set to expire on June 10, 2026. ECF No. 25 at ¶ 17; ECF No. 25, attach. 2 at 2 (Form I-94).

Respondents also initiated removal proceedings against Petitioner, entitling him to present his claim for asylum in immigration court. ECF No. 25 at ¶ 18. Petitioner applied for, and received, employment authorization based on the grant of his parole. *Id.* His employment authorization was initially valid until October 6, 2026. *Id.*; ECF No. 25, attach. 3 (employment authorization).

On June 13, 2025, while Petitioner was still on parole, he appeared for a preliminary status hearing at the Annadale Immigration Court. ECF No. 25 at ¶ 20. After the hearing ended, five plain-clothes ICE officers arrested Petitioner. *Id.* at ¶ 21. For no apparent reason, Petitioner was moved around between local jail facilities for several days, until he was placed at Farmville Detention Center on June 15, 2025. *Id.* at ¶ 22. In August of 2025, Petitioner passed a credible fear interview and was placed back into removal proceedings. *Id.* at ¶ 23. DHS officials served him with a second Notice to Appear on August 26, 2025, again charging Petitioner under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who, at the time of application for admission, did not possess valid entry or travel documents. *Id.* at ¶ 23; ECF No. 25 attach. 5 (the second NTA). The second NTA noted that Petitioner was "an alien present in the United States *who has not be admitted or paroled*." ECF No. 25, attach. 5 (emphasis added). Later, on October 15, 2025, Petitioner was issued Additional Charges of Inadmissibility/Deportability, checking a box stating he was an "arriving alien." ECF No. 25, attach. 6.

Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture in December of 2025. ECF No. 25 at ¶ 24. On January 29, 2026, Petitioner was set for a merits hearing on his asylum claim, but at that hearing, the Immigration Judge granted Respondents' motion to pretermit, and ordered Petitioner removed to Ecuador. *Id.* at ¶¶ 25–26. Because Petitioner did not appeal the decision ordering him removed to Ecuador, he

became subject to an administratively final removal order, and Petitioner was subject to mandatory detention pursuant to 8 U.S.C. § 1231. *Id.* at ¶ 28. Respondents then moved to reopen removal proceedings against Petitioner, which remain pending. *Id.* at ¶ 29.

## II. LEGAL STANDARDS

*1. Habeas Relief Pursuant to 28 U.S.C. § 2241*

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted). Pursuant to 28 U.S.C. § 2243, federal courts are authorized to adjudicate habeas petitions "as law and justice require" and have "substantial discretion to fashion a remedy." *Moore v. Maryland*, 163 F.4th 828, 845 (4th Cir. 2026) (citing *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (quoting 28 U.S.C. § 2243)).

*2. Humanitarian Parole*

Even when a noncitizen is classified as "seeking admission" and subject to mandatory detention pursuant to 8 U.S.C. § 1225, DHS has discretion to parole noncitizens into the United States on a "case-by-case basis" for "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The regulations direct that DHS "should apply reasonable discretion" in considering parole, and may consider "all relevant factors," including "the giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure";

"community ties such as close relatives with known addresses"; and "agreement to reasonable conditions (such as periodic reporting of whereabouts)." 8 C.F.R. § 212.5(d). However, humanitarian parole for noncitizens subject to mandatory detention "shall not be regarded as admission of the alien." 8 U.S.C. § 1182(d)(5)(A). If the Secretary of DHS determines that the purposes of parole "have been served," then the noncitizen shall "return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Thus, the statute "employs a legal fiction whereby non-citizens are legally permitted to enter the country but are nonetheless treated, for legal purposes, as if stopped at the border." *Pineda-Berrios v. Lyons*, 1:25cv2332, 2026 WL 384159, at *2 (E.D. Va. Feb. 11, 2026).

Regulations implementing humanitarian parole direct that parole may terminate either automatically or upon notice. 8 C.F.R. §§ 212.5(e)(1)–(2). Parole may terminate automatically upon the noncitizen's departure from the United States, or if parole was authorized for a set time, upon expiration of that set period. 8 C.F.R. §§ 212.5(e)(1)(i)–(1)(ii). Alternatively, parole may terminate *upon written notice* if: (1) the purpose for which parole was authorized has been accomplished; or (2) a DHS individual authorized by the regulations determines that "neither humanitarian reasons nor public benefit warranted the continued presence of the noncitizen in the United States." 8 C.F.R. § 212.5(e)(2)(i).

Upon written notice of termination, the noncitizen is "restored to the status that he or she had at the time of parole." *Id.* If parole terminates either through expiration or written notice, "any order of exclusion, deportation or removal previously entered shall be executed," unless the order "cannot be executed within a reasonable time," *Id.* §§ 212.5(e)(1)(ii)-(e)(2)(i). Under those circumstances, the noncitizen "shall again be released on parole" unless a DHS individual

authorized by the regulations determines that "the public interest requires that the alien be continued in custody." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(a) (listing authorized DHS individuals).

## III. ANALYSIS

At the outset, the undersigned finds that the central issue in the Amended Petition is whether Respondents' unlawfully detained Petitioner by failing to terminate his parole—not whether Petitioner is considered an applicant for admission and subject to mandatory detention.[2] For the reasons explained below, the undersigned finds that the Amended Petition should be granted as to Count Three.

### *1. Respondents Violated Petitioner's Fifth Amendment Due Process Rights by Arresting and Detaining Petitioner Without Terminating His Valid Parole.*

Count Three alleges that Respondents' failure to properly revoke Petitioner's parole violates his procedural due process rights conferred by the Fifth Amendment to the U.S. Constitution. ECF No. 25 at ¶¶ 87–101. The Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. V. The Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether civil detention comports with due process requirements, courts look to the three-part test established in *Mathews v. Eldridge*. *See Hasan v. Crawford*, 800 F. Supp. 3d 641, 659 (E.D. Va. 2025). Under that test, the Court considers: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation based on the procedures used;

[2] Respondents and Petitioner classify Petitioner as detained pursuant to § 1225(b)(2). *See* ECF No. 27 at 2 (arguing Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)); ECF No. 28 at 2 (noting that Petitioner "recognizes that he is an applicant for admission under § 1225(b)(2)). Because Petitioner was released on parole, the undersigned does not find that classification particularly relevant but accepts the proposition for the purposes of this Report and Recommendation.

and (3) the Government's interest in the function and burdens of alternative procedural requirements. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Applying the first factor, Petitioner's private interest affected by his arrest and detention is twofold: he has a general interest in remaining free from detention, and he has a distinct interest in his statutorily authorized parole. Petitioner has an obvious general interest in remaining free from civil immigration detention. Freedom from detention "lies at the heart of the liberty the Due Process Clause protects." *Zadvydas*, 533 U.S. at 690. Beyond his general liberty interest, Petitioner has a distinct interest in continuing his freedom while on parole. At the time of his arrest on June 13, 2025, Petitioner had almost an entire full year—eleven months and twenty-eight days—remaining on his valid parole. His interest in remaining out on parole while pursuing fear-based protection from removal is substantial. The first *Mathews* factor weighs heavily in favor of Petitioner.

Applying the second factor, the procedures used to arrest and detain Petitioner created a substantial risk of erroneous deprivation of Petitioner's freedom, especially given that Respondents failed to employ *any* procedures to terminate Petitioner's parole, let alone the proper procedures. Pursuant to the regulations, if a noncitizen's parole has not expired, DHS may only terminate it upon *written notice* to the parolee, *and* "(1) accomplishment of the purpose for which parole was authorized, or (2) the opinion of a qualified DHS official that neither humanitarian concerns nor public benefits warrant the continued presence of the noncitizen in the United States." *A.A. v. Crawford*, No. 3:26cv301, 2026 WL 1601798, at *3 (E.D. Va. June 4, 2026) (citing 8 U.S.C. § 1182(a)(5)(A); 8 C.F.R. § 212.5(e)(2)(i)). There is no evidence in the record that any of those conditions were met here. Respondents do not argue, and there is no evidence in the record that Petitioner received *any* written notice that his parole was being terminated *before or after* he

was arrested and detained.[3] Nor is there any evidence in the record to indicate that the purpose for which parole was authorized was accomplished, or that a qualified DHS individual determined that neither humanitarian concerns or public benefits warranted Petitioner's continued presence in the United States.[4] Accordingly, the risk of erroneous deprivation is high, and appears to have occurred when Respondents detained Petitioner without any notice or determination of whether he accomplished the purposes of his parole or determination by a qualified DHS official that Petitioner's presence in the United States no longer benefits humanitarian concerns or the public. The second *Mathews* factor weighs in favor of Petitioner.

As for the third factor, Respondents have an "interest in efficient administration of the immigration laws." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). However, Respondents' interest in administering immigration laws does not extend to disregarding those same laws in pursuit of their interest. Respondents have no legitimate interest in arresting and detaining Petitioner without employing legally required procedures, and any interest they do have cannot be accomplished by violating Petitioner's due process rights. *See Ajabzoi v. Noem, et al.*, No. 1:26-cv-551, 2026 WL 2056537, at *4 (E.D. Va. Apr. 8, 2026). This is especially true where, by virtue of his release on

---

[3] Though not argued by Respondents, the second NTA does not, and could not, constitute proper written notice. DHS issued the second NTA more than two months *after* Petitioner was arrested and detained and therefore cannot logically constitute "notice." *See* ECF No. 25, attach. 5 at 2. Moreover, the second NTA certainly could not have notified Petitioner that his parole was being terminated because it charged him as "an alien present in the United States who has not been admitted or *paroled*," when Petitioner clearly had been paroled. *Id.*

[4] Even if Petitioner's parole had expired or he received proper notice, many courts have determined that 8 U.S.C. § 1182(d)(5)(A) requires DHS to make an individualized determination that the purposes of parole have been accomplished or that the reasons for parole no longer exist. *See Villegas-Gonzalez v. Lynch*, No. 1:25-CV-1795, 2025 WL 3767939, at *5 (W.D. Mich. Dec. 31, 2025) (citing cases); *Hurtado-Barba v. Perry*, No. 3:26CV188, 2026 WL 950489, at *6 (E.D. Va. Apr. 8, 2026) ("Courts around the country have determined that, when, as here, a petitioner is paroled into the United States for purposes of applying for asylum, and that asylum application remains pending, revoking parole without a determination as to whether its purposes have been served is inappropriate.").

parole, DHS already determined on "a case-by-case basis" that parole should be authorized because Petitioner is not a safety or flight risk. *See id.* ("Parole is premised on a determination that Petitioner did not pose a safety or flight risk.") (citation omitted); 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis[.]"). Respondents have not offered, and the record is devoid of any interest they have in detaining Petitioner *while* he was on a valid parole, or any interest in his continued detention now. Accordingly, the third *Mathews* factor also weighs in favor of Petitioner.

Because each *Mathews* factor weighs in favor of Petitioner, the Court **FINDS** that Respondents violated Petitioner's Fifth Amendment due process rights, and the Amended Petition should be granted as to Count Three.[5]

Here, appropriate remedy for the violation of Petitioner's due process rights is release. *See Ajabzoi*, 2026 WL 2056537, at *4 (finding the proper remedy for unlawful revocation of parole is release); *Pineda-Berrios*, 2026 WL 384159, at *8 (same); *Hurtado-Barba*, 2026 WL 950489, at *7 (same). At the time Petitioner was arrested, he was out on parole that was still valid for almost an entire year. Having been unlawfully detained for over fourteen months now, he is entitled to be released.

---

[5] Petitioner framed Count Three as a violation of his Fifth Amendment due process rights and not a violation of his statutory rights under the Immigration and Nationality Act ("INA"). Though Respondents provided no specific argument in response to Petitioner's allegations, the Court finds that even if Petitioner's due process rights were confined to the INA, Respondents did not provide Petitioner with process he is due under that statutory and regulatory regime. *See Hurtado-Barba*, 2026 WL 950489, at *5 ("Regardless of whether Petitioner's due process rights are defined by the INA alone or the Fifth Amendment, Respondents have failed to provide Petitioner with the process that he is due."). As explained above, DHS did not meet the requirements for terminating parole. DHS was required to provide written notice of termination and either determine that the purpose for which parole was authorized had been accomplished or obtain the opinion of a qualified DHS official that Petitioner's continued presence in the United States was unwarranted. There is no evidence in the record that DHS did either.

*2. The Court Declines to Reach the Merits of Counts One, Two, and Four of the Amended Petition.*

While Petitioner raised four distinct grounds for relief, the Court finds that because relief is warranted on Count Three, addressing Petitioner's remaining claims is not necessary. Counts One and Two allege violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. ECF No. 25 at 17–21. But judicial review of agency action under the APA is only appropriate where "there is no other adequate remedy in a court[.]" *Bacardi & Co. v. United States PTO*, 104 F.4th 527, 534 (4th Cir. 2024) (citing 5 U.S.C. § 704). Without additional briefing and a meaningful response from Respondents, the Court is not prepared to decide this issue. *Quispe v. Blanche, et al.*, No. CV 26-817, 2026 WL 2253663, at *3 (D. Md. Aug. 5, 2026) (concluding that a petition for a writ of habeas corpus is an adequate remedy precluding relief under the APA) (citing cases). Because the Court recommends granting relief on Count Three, ordering supplemental briefing on Counts One and Two would only keep Petitioner detained for longer. Similarly, Count Four alleges a violation of Petitioner's substantive and procedural due process rights based on his prolonged detention without purpose. ECF No. 25 at 24–25. Because the Court recommends granting relief on Count Three, an analysis of Count Four is unnecessary.

## IV. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Amended Petition, ECF No. 25, be **GRANTED.**[6] The Court further **RECOMMENDS** that:

- Respondents release Petitioner from custody with all of his personal property subject to the conditions of his existing parole, except for any time limitation periods, within **ONE DAY** of entry of final order in this matter;

[6] The Court also recommends that the undersigned's original R&R be **DISMISSED** as **MOOT**.

- Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them, be **ENJOINED** from rearresting Petitioner solely based on the expiration of his parole; and be **ENJOINED** from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with conditions of his parole unrelated to its expiration; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e); and that
- Respondents file a status report with the Court within **THREE DAYS** of Petitioner's release to confirm that he has been released from custody.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 19, 2026